# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER L. LOMBRANO )<br>3808 Crozier Lane )<br>Big Lake, Alaska 99652 )<br>                                               )<br>            *Plaintiff,*              )<br>                                               )<br>v.                                            )      Civil Action No. 1:21-cv-00872 DLF<br>                                               )<br>DEPARTMENT OF THE AIR FORCE  )<br>1690 Air Force Pentagon        )<br>Washington, DC 20330-1670    )<br>                                               )<br>            *Defendant.*            )<br>                                               ) | |

## SECOND AMENDED COMPLAINT
### (Privacy Act, 5 U.S.C. § 552a)

### *Jurisdiction*

1.     The Court has jurisdiction under 28 U.S.C. § 1331 and under 5 U.S.C. § 552a(g)(1), which provides for redress in the District Courts based upon violations of the Privacy Act. A damages award is requested for the harm caused by the unlawful and intentional release of information maintained by Defendant.

### *Venue*

2.     Venue is proper under 5 U.S.C. § 552a(g)(5) and 28 U.S.C. §1391.

### *Parties*

3.     Plaintiff, Ms. Jennifer Lombrano, is a citizen of the United States who resides at the address stated in the caption, and who at the time of the incident that led to this lawsuit was serving as a commissioned officer in the United States Public Health Service until she was honorably retired in February 2021.

4. Defendant, the United States Air Force, is an agency of the United States that maintains records as provided for under the Privacy Act.

### *Statute of Limitations*

5. Under the Privacy Act, suit must be brought within two years of the date on which the claim accrues. 5 U.S.C. § 552a(g)(5). "[T]he cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). Plaintiff became aware of the one of the disclosures at issue in this case on or about August 2020. Another set of disclosures was not uncovered until on or around January 2024, during discovery. The case is thus timely filed.

### *Statutory Framework*

6. As defined in the Privacy Act, "maintain" includes various record keeping functions to which the Act applies: i.e., maintaining, collecting, using, and disseminating. 5 U.S.C. § 552a(a)(3).

7. In turn, this connotes control over and responsibility and accountability for systems of records. 5 U.S.C. § 552a(a)(3).

8. The Department of the Air Force is required to maintain personnel records on all members of the federally recognized units and organizations of the Air Force. 10 U.S.C. § 10204.

9. Such records are records within the meaning of the Privacy Act.

10. Such records need not be physically located in the agency for them to be maintained by the agency.

*Predicate Factual Background*

11. In May 1998, Plaintiff graduated from St. Mary's University in San Antonio, Texas with a Bachelor of Arts degree in Biology.

12. Plaintiff was subsequently awarded a Doctor of Dental Surgery from the University of Texas Health Science Center at San Antonio, Texas in May, 2002.

13. In June 2006, Plaintiff completed an Advanced General Practice Residency at the Alaska Native Medical Center, Anchorage, Alaska.

14. Thereafter, Plaintiff completed an Oral and Maxillofacial Surgical Residency at the Womack Army Medical Center, Fort Bragg, North Carolina in September, 2010.

15. As noted, Plaintiff served as an Oral and Maxillofacial surgeon for the United States Public Health Service.

16. In that capacity, Plaintiff was assigned, pursuant to a Memorandum of Agreement, to the SouthCentral Foundation, Anchorage, Alaska where she served as an Oral and Maxillofacial surgeon on active duty, serving as a commissioned corps officer in the United States Public Health Service from 2005 until she was terminated on September 2, 2020.

17. The SouthCentral Foundation is an Alaska Native-owned, nonprofit health care organization serving nearly 65,000 Alaska Native and American Indian people living in Anchorage, Matanuska-Susitna Borough and 55 rural villages.

18. After her pending retirement, Plaintiff intended to remain in her position as a civilian with the SouthCentral Foundation.

*The Unlawful and Improper Dissemination of Information*
*Maintained by the Air Force in Plaintiff's Case*

19. The averments of the preceding paragraphs are incorporated herein.

20. In August 2020, Plaintiff was suffering from severe panic attacks resulting from personal and professional issues that arose.

21. On or about August 11, 2020, Plaintiff consulted with her supervisor at SouthCentral Foundation, Abby Debonis, who advised Plaintiff to take some time off and Ms. Debonis advised her to do a "walk-in" to the Behavioral Health Clinic, Joint Base Elmendorf-Richardson Hospital, Anchorage, Alaska.

22. Public Health Service officers receive their health care at Department of Defense Medical Treatment Facilities like Joint Base Elmendorf-Richardson Hospital.

23. On or about August 11, 2020, Plaintiff was treated by the on-call outpatient mental health care provider at Joint Base Elmendorf-Richardson with whom she confided that she had intended to seek treatment at the Schick Shadel Hospital, a 10-day treatment facility for alcohol and drug rehabilitation in Seattle, Washington.

24. That outpatient treatment provider recommended that the Plaintiff stay overnight and get medical attention since she had a history of cardiac ablation in May 2019.

25. The provider told her that the next day she would be able to make her treatment arrangements and they would also give her options for treatment programs that were covered by Tricare insurance.

26. Plaintiff understood that she would be admitted to Internal Medicine Service but when she was taken to the floor, she was instead escorted to the inpatient Behavioral Health Unit, essentially this was a psych ward behind locked doors.

27. When Plaintiff questioned this, the Airman lied to her, reporting that the Internal

Medicine floor was full.

28. During the course of the admission, Plaintiff's belongings were confiscated and inventoried.

29. During that inventory, hospital officials seized three 2 milligram Gummy Bears infused with THC, the metabolite for marijuana.

30. After being summoned by the Behavioral Health Center, law enforcement investigator, Wyatt Eichner, arrived with a drug dog, seized the Gummy Bears and questioned the Plaintiff, who disclosed that the THC Gummy Bears did not belong to her, but that she had been on a camping trip with friends who must have left them in the bag, which they had shared.

31. On the morning of August 12, 2020, someone from the JBER security police contacted the front desk at SouthCentral Foundation.

32. At the time, Captain Martha Wanca was serving as the Western Region Commissioned Corps Liaison. Plaintiff was one of the officers under Captain Wanca's supervision in August of 2020.

33. On August 12, 2020, Captain Wanca received a call from a JBER security police officer. The JBER officer informed Captain Wanca that Plaintiff had been discovered with drugs on base and that charges would be filed. The officer further informed Captain Wanca that Plaintiff had been issued a citation.

34. The officer asked Captain Wanca if Plaintiff was a PHS officer, and Captain Wanca confirmed that this was correct. The JBER security police officer also asked if Plaintiff was subject to the Uniform Code of Military Justice. Captain Wanca stated, accurately, that she was not.

35. Prior to this phone call, Captain Wanca had not been aware that Plaintiff had been hospitalized at JBER, or that Plaintiff had received a citation for possession of marijuana at JBER.

36. Following this conversation, Captain Wanca called Ms. McIntire. Captain Wanca informed Ms. McIntire about her conversation with the JBER security police officer. Captain Wanca communicated to Ms. McIntire that Plaintiff had been hospitalized at JBER and was going to be criminally charged based on what Captain Wanca had heard from the JBER security police officer.

37. At around the same time, Captain Wanca spoke on the phone with a physician. During that call, Captain Wanca discussed Plaintiff's hospitalization with the physician.

38. On or about August 12, 2020, Plaintiff and her husband, William Crabtree, Sr., who is also a medical health care provider, met with Colonel Christine Campbell, USAF, the attending psychiatrist, in the inpatient Behavioral Clinic at Joint Base Elemendorf-Richardson and explained that Plaintiff intended to seek treatment at an inpatient facility in Seattle, Washington, having been approved leave.

39. Colonel Campbell disclosed that she had already contacted SouthCentral Foundation, that she has spoken with Plaintiff's supervisor and that she had disclosed Plaintiff's medical condition and her current mental state.

40. On or about August 16, 2020, while in treatment, Plaintiff was told by her supervisor, Dr. Abby Debonis, that Colonel Campbell in fact had contacted the HR department and told them that she was impaired, mentally unstable, had an alcohol problem and now had a drug charge for possession of an illegal substance.

41. On August 17, 2020, Plaintiff made a complaint to Colonel Sunderland, the Mental Health Flight Commander about this HIPPA violation.

42. While Colonel Sunderland indicated she would investigate the matter, upon information and belief, no investigation occurred.

43. That same day, August 17, 2020, Captain Wanca received another call from the same JBER security police officer who had called her on August 12, 2020.

44. On this call, Captain Wanca learned from the JBER security police officer that Plaintiff had been charged with a federal criminal violation of 21 USC, Section 844, simple possession, and that these charges were being brought before a federal magistrate in a court appearance on November 10, 2020, at 2 p.m.

45. During the call, the JBER security police officer told Captain Wanca that Plaintiff appeared to be out of control, refused to sign the citation, and ripped up her portion.

46. On August 19, 2020, Captain Wanca informed Ms. McIntire that Plaintiff had ripped up the citation she had received at JBER.

47. Based upon the unlawful disclosures by Air Force personnel, on August 28, 2020, the Human Resources department at SouthCentral Foundation (which consisted of Ms. McIntire together with Carla Ogle), decided to recommend Plaintiff's termination.

48. Ms. McIntire could have recommended progressive discipline for Plaintiff, but chose not to do so. Ms. McIntire concluded that progressive discipline was not warranted based on Plaintiff's alleged failure to be forthcoming regarding the citation she had received at JBER.

49. Four factors influenced Ms. McIntire's decision to recommend Plaintiff's termination. First, the criminal citation which Ms. McIntire learned about from Captain Wanca.

Second, Plaintiff's alleged ripping up of the citation, which Ms. McIntire also learned about from Captain Wanca. Third, Plaintiff's failure to self-report the citation. Fourth, and finally, the disclosure by Colonel Campbell, which caused Ms. McIntire to have concerns about patient care.

50. Plaintiff must now, as a result and to her detriment, disclose her termination and the grounds therein if she seeks employment.

51. Upon information and belief, Defendant, through its agents, intentionally or willfully disclosed the contents of Plaintiff's medical record, contained in a system of records, without the prior written consent of the Plaintiff in violation of 5 U.S.C. § 552a(b).

52. Plaintiff has suffered both economic and non-economic damages due to the unlawful and intentional disclosure of this confidential information.

### *Legal Claim*

**The actions of the United States Air Force violated the Privacy Act.**

53. The averments of the preceding paragraphs are incorporated herein.

54. The USAF, acting for Defendant, maintained records within the meaning of the Privacy Act regarding Plaintiff.

55. A JBER security police officer and Colonel Campbell, both acting for the Defendant, intentionally or willfully disclosed and released protected records within the meaning of the Privacy Act by contacting the Human Resources office of SouthCentral Foundation and by contacting Captain Wanca. Neither the JBER security police officer nor Colonel Campbell had the written consent of the Plaintiff. Nor did this disclosure meet any of the exceptions stated in 5 U.S.C. § 552a(b)(1) through (12).

56. A JBER security police officer and Colonel Campbell, acting for Defendant,

intentionally or willfully disseminated specific information covered under the Privacy Act to Plaintiff's supervisor in the U.S. Public Health Service and the staff at the Southcentral Foundation.

57. As a physician, Colonel Campbell is well aware of the strictures governing the release of medical information. This was not just gross negligence on Colonel Campbell's part; it was a willful and intentional effort to contact and speak with Plaintiff's supervisor and employer's human resources staff despite her awareness of patient privacy and confidentiality rules.

58. Colonel Campbell had never spoken with Plaintiff before the she contacted Plaintiff's supervisor and the Southcentral Foundation human resources office. As Colonel Campbell was not present when Plaintiff was admitted to the hospital, Colonel Campbell could only have obtained the medical and legal information that she passed on by reading the medical record that was created when Plaintiff entered the hospital at Joint Base Elmendorf-Richardson.

59. The intentional and unlawful dissemination of this information by a JBER security police officer and Colonel Campbell caused Plaintiff pecuniary loss as she was dismissed from her position at Southcentral Foundation, a job she had intended to keep even after she would eventually retire from the USPHS. She was forced to retire early from the USPHS, losing the difference in salary versus her retired pay. Now she could only find employment on a part-time, two-day per week basis. Her future employment prospects are jeopardized because she will have to reveal circumstances behind the dismissal to future employers.

60. Defendant is liable to Plaintiff for this unlawful and intentional disclosure as

provided for under the Privacy Act.

### *Prayer for Relief*

WHEREFORE, Plaintiff prays that judgment be entered:

(a) awarding her monetary damages for the unlawful release of her records which caused her severe injury;

(b) ordering Defendant to expunge all records or information maintained by Defendant regarding Plaintiff that is inaccurate and/or derogatory, pursuant to 5 U.S.C. § 552a(g)(2)(A);

(c) awarding reasonable attorney's fees and costs of this action in accordance with the Privacy Act, including but not limited to 5 U.S.C. § 552a(g)(2)(B) and 5 U.S.C. § 552a(g)(3)(B); and

(d) ordering such other and further relief as may, in the circumstances, be just and proper.

Dated: March 4, 2025.          Respectfully submitted,

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
100 M St. SE, Ste 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135
Email: davidsheldon@militarydefense.com

*Attorney for Plaintiff*