UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER L. LOMBRANO, | |
| Plaintiff, | |
| v. | Civil Action No. 21-0872 (DLF) |
| DEPARTMENT OF THE AIR FORCE, | |
| Defendant. | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the Department of the Air Force, by and through undersigned counsel, hereby moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In support of this motion, and in opposition to Plaintiff's Motion for Summary Judgment (ECF No. 39) and Plaintiff's Memorandum in Support (ECF No. 39-1), Defendant respectfully submits the attached memorandum, a Statement of Facts, and the supporting declaration of Christine L. Campbell.

\*        \*        \*

Dated:  April 25, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By:  _____/s/ Dedra S. Curteman_____

DEDRA S. CURTEMAN,
    D.C. Bar #90021492
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2550

*Attorneys for the United States of America*

- 2 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JENNIFER L. LOMBRANO,

     Plaintiff,

    v.

DEPARTMENT OF THE AIR FORCE,

    Defendant.

Civil Action No. 21-0872 (DLF)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**[1] IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**[2] IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................... i

Table of Authorities ........................................................................................................... ii

Background ......................................................................................................................... 2

    I.     Statutory Background ............................................................................... 2

    II.    Factual Background ................................................................................ 4

    III.   Procedural History ................................................................................ 11

Legal Standards ................................................................................................................ 12

Argument .......................................................................................................................... 13

    I.     Plaintiff Has Not Demonstrated that the Disclosures Were Maintained Within and Retrieved from a System of Records as Defined by the Privacy Act. .................. 16

    II.    Plaintiff Has Not Demonstrated that the Disclosures Were Intentional or Willful. ................................................................................................................. 19

    III.   Plaintiff Has Not Demonstrated that the Disclosures Resulted in an Adverse Effect. .......................................................................................................... 22

Conclusion ........................................................................................................................ 25

**TABLE OF AUTHORITIES**

Cases

*Albright v. United States*,
732 F.2d 181 (D.C. Cir. 1984) ...................................................................................... 4, 19, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 12, 13

*Bartel v. FAA*,
725 F.2d 1403 (D.C. Cir. 1984) .................................................................................. 3, 13, 18

*Beaven v. Dep't of Just.*,
622 F.3d 540 (6th Cir. 2010) ................................................................................................ 19

*Cacho v. Chertoff*,
Civ. A. No. 06-0292 (ESH), 2006 WL 3422548 (D.D.C. Nov. 28, 2006) ................................ 4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................. 12

*Chambers v. Department of the Interior*
568 F.3d 998 (D.C. Cir. 2009) ............................................................................................... 24

*Chang v. Dep't of Navy*,
314 F. Supp. 2d 35 (D.D.C. 2004) ......................................................................................... 18

*Chickakli v. Kerry*,
203 F. Supp, 3d 48 ................................................................................................................... 24

*Cloonan v. Holder*,
768 F. Supp. 2d 154 (D.D.C. 2011) ................................................................................. 16, 17

*Convertino v. Dep't of Just.*,
769 F. Supp. 2d 139 (D.D.C. 2011) ....................................................................................... 19

*Covert v. Harrington*,
876 F.2d 751 (9th Cir. 1989) ........................................................................................... 19, 20

*Czekalski v. Peters*,
475 F.3d 360 (D.C. Cir. 2007) ............................................................................................... 13

*Deters v. Parole Comm'n*,
85 F.3d 655 (D.C. Cir. 1996) ................................................................................................. 19

*Dickson v. Off. of Pers. Mgmt.*,
828 F.2d 32 (D.C. Cir. 1987) ................................................................................................... 3

*Doe v. Chao*,
    540 U.S. 614 (2004)............................................................................................ 3, 14, 20

*Doe v. Dep't of,*
    *Treas.*, 706 F. Supp. 2d 1 (D.D.C. 2009)................................................................ 15, 18

*Doe v. FBI*,
    718 F. Supp. 90 (D.D.C. 1989)..................................................................................... 24

*F.A.A. v. Cooper*,
    566 U.S. 284 (2012)..................................................................................................... 23

*Greene v. Dalton*,
    164 F.3d 671 (D.C. Cir. 1999)...................................................................................... 13

*Hanna v. Herman*,
    121 F. Supp. 2d 113 (D.D.C. 2000) ............................................................................... 4

*Henke v. Dep't of Com.*,
    83 F.3d 1453 (D.C. Cir. 1996)...................................................................................... 14

*Hill v. United States Air Force*,
    795 F.2d 1067 (D.C. Cir. 1986).................................................................................... 20

*Hurt v. D.C. Ct. Servs. & Offender Supervision Agency*,
    827 F. Supp. 2d 16 (D.D.C. 2011) ............................................................................... 20

*In re U.S. Office of Personnel Management Data Security Breach Litigation*,
    928 F.3d 42 (D.C. Cir. 2019)....................................................................................... 22

*Kleiman v. Dep't of Energy*,
    956 F.2d 335 (D.C. Cir. 1992)....................................................................................... 4

*Krieger v. Dep't of Just.*,
    529 F.Supp.2d 29 (D.D.C. 2008).............................................................................. 3, 16

*Krieger v. Dep't of Justice*,
    562 F. Supp. 2d 14 (D.D.C. 2008) ............................................................................... 24

*Laningham v. Navy*,
    813 F.2d 1236 (D.C. Cir. 1987) ........................................................................ 19, 20, 21

*Lewis v. Mossbrooks*,
    788 F. App'x 455 (9th Cir. 2019) ................................................................................. 19

*Logan v. Dep't of Veterans, Affs.*,
    357 F. Supp. 2d 149 (D.D.C. 2004).............................................................................. 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................................... 12

*Maydak v. United Sates*,
    630 F.3d 166 (D.D.C. 2011) ..................................................................................... 16, 19, 20

*McCready v. Nicholson*,
    465 F.3d 1 (D.C. Cir. 2006)...................................................................................... 3, 4, 10, 24

*Mueller v. Winter*,
    485 F.3d 1191 (D.C. Cir. 2007) ............................................................................................. 4

*Mulhern v. Gates*,
    525 F. Supp. 2d 174 (D.D.C. 2007) ...................................................................................... 20

*Mullane v. Dep't of Justice*,
    Civ. A. No. 22-0725 (RBW), 2024 WL 3359534 (D.D.C. July 10, 2024)......................... 14, 18

*Owens v. Rep. of Sudan*,
    864 F.3d 751 (D.C. Cir. 2017) ............................................................................................. 22

*Paige v. DEA*,
    666 F.3d 1355 (D.C. Cir. 2012) ...................................................................................... 16, 17

*Parks v. IRS*,
    618 F.2d 677 (10th Cir. 1980) .............................................................................................. 19

*Powers v. Parole Comm'n*,
    296 F. App'x 86 (D.C. Cir. 2008)..................................................................................... 19, 21

*Runkle v. Gonzales*,
    391 F. Supp. 2d 210 (D.D.C. 2005) ...................................................................................... 14

*Scrimgeour v. IRS*,
    149 F.3d 318 (4th Cir. 1998) ................................................................................................ 19

*Sussman*,
    494 F.3d ................................................................................................................................ 19

*Velikonja v. Mueller*,
    362 F. Supp. 2d 1 (D.D.C. 2004).......................................................................................... 20

*Waters v. Thornburgh*,
    888 F.2d 870 (D.C. Cir. 1989)............................................................................................. 20

*Welborn v. IRS*,
    218 F. Supp. 3d 64 (D.D.C. 2016).................................................................................. 23, 24

*White v. Off. Pers. Mgmt.*,
   840 F.2d 85 (D.C. Cir. 1988) ................................................................................. 19

Statutes

5 U.S.C. § 552a(a)(5) ................................................................................. 13, 14, 16, 22

5 U.S.C. § 552a(b) ............................................................................................ 11, 13, 14

5 U.S.C. § 552a(g)(1) .................................................................................................... 3

5 U.S.C. § 552a(g)(1)(C) .............................................................................................. 3

5 U.S.C. § 552a(g)(1)(D) ................................................................................... 3, 14, 22

5 U.S.C. § 552a(g)(2)(A) ............................................................................................ 12

5 U.S.C. § 552a(g)(2)(B) ............................................................................................ 12

5 U.S.C. § 552a(g)(3)(B) ....................................................................................... 12, 13

5 U.S.C. § 552a(g)(4) ......................................................................................... 3, 14, 19

5 U.S.C. ¶ 552a .......................................................................................................... 11

Pub. L. No. 93–579 ....................................................................................................... 2

Rules

Fed. R. Civ. P. 56(a) ................................................................................................... 12

Fed. R. Civ. P. 56(c)(1) ............................................................................................... 12

Fed. R. Civ. P. 56(c)(1)(A) ......................................................................................... 17

Federal Rule of Civil Procedure 56 .............................................................................. 1

Plaintiff, Jennifer L. Lombrano, brought this Privacy Act lawsuit on March 31, 2021. *See* Compl. (ECF No. 1). At the time of the events that form the basis for Plaintiff's lawsuit, Plaintiff was an oral and maxillofacial surgeon and Public Health Commissioned Officer employed by the Southcentral Foundation, an Alaska, Native-owned nonprofit health care organization in Anchorage, Alaska, through a Memorandum of Agreement with the Department of Health and Human Services, Public Health Service. In approximately August 2020, Plaintiff began experiencing severe panic attacks resulting from professional and personal issues. Shortly after those panic attacks began, Plaintiff visited the Behavioral Health Clinic at Joint Base Elmendorf-Richardson in Anchorage, Alaska, where she was subsequently admitted as a patient in the Behavioral Health Unit. At the time of her admission, Plaintiff's belongings were taken and inventoried, at which point unnamed individuals allegedly employed by Joint Base Elmendorf-Richardson found and seized three two milligram gummy bears infused with THC, the metabolite for marijuana. On the morning of August 12, 2020, Plaintiff alleges that "someone" from Joint Base Elmendorf-Richardson security police contacted the front desk at Southcentral Foundation, where Plaintiff worked, and that Captain Martha Wanca, the Western Region Commissioned Corps liaison, received a call from a Joint Base Elmendorf Richardson security police officer notifying her that Plaintiff had been discovered with drugs on base, that charges would be filed, and that a Joint Base Elmendorf-Richardson officer had issued Plaintiff a citation. Separately, Plaintiff contends that her treating psychiatrist contacted the Southcentral Foundation about Plaintiff's medical condition and her then-current medical state. Plaintiff argues that these communications ultimately resulted in Southcentral Foundation's termination of Plaintiff, and that the disclosures resulted in economic and non-economic damages for which Plaintiff now brings a Complaint for a violation of the Privacy Act.

Plaintiff's motion for summary judgment and memorandum in support (ECF No. 39, 39-1), however, has not demonstrated that summary judgment in her favor is due. To the contrary, summary judgment in Defendant's favor is warranted. *First*, Plaintiff has not demonstrated that the disclosures, either by the unnamed security guard or her treating psychiatrist, Colonel Christine Campbell, was information obtained through a system of records as defined by the Privacy Act. Rather, Plaintiff does not know and has not otherwise shown that the information disseminated by an unnamed officer employed at Joint Base Elmendorf-Richardson stemmed from that officer's knowledge of a record as defined by the Privacy Act. In addition, the information disclosed by Colonel Campbell occurred as a result of her knowledge of what Plaintiff told her in the course of Plaintiff's intake in the Behavioral Health Unit at Joint Base Elmendorf-Richardson. In both instances, Plaintiff has not shown that the information was obtained from a system of records, as required by the Privacy Act. *Second*, the communications Plaintiff complains of were not intentional or willful; rather, on Plaintiff's own admission, the communications at most were negligent. Such action does not warrant a finding that Plaintiff is entitled to summary judgment, nor does it require that this case proceed to trial. *Third*, Plaintiff has not demonstrated that the employment decision here—the termination of her at-will employment with the Southcentral Foundation—was a result of the allegedly unlawful communications of which Plaintiff complains. Accordingly, Defendant is entitled to summary judgment.

## BACKGROUND

### I.    Statutory Background

When it passed the Privacy Act, Congress declared that "in order to protect the privacy of individuals identified in information systems maintained by federal agencies, it is necessary and proper for the Congress to regulate the collection, maintenance, use, and dissemination of information by such agencies." Privacy Act of 1974, Pub. L. No. 93–579, § 2(a)(5), 88 Stat. 1896.

The Act provides agencies with "detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004). These detailed instructions and provisions for relief "protect [ ] individuals from injury that can result from the bureaucratic habit of collecting and retaining information, however dated, prejudicial, or false." *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 38 (D.C. Cir. 1987). "Put simply, the Act 'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to . . . ensur[e] that his records are accurate and properly used.'" *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984)).

Section (g) of the Act creates causes of action for four categories of agency misconduct. 5 U.S.C. § 552a(g)(1). The first two categories "cover deficient management of records," by providing for the "correction of any inaccurate or otherwise improper material in a record" and for "a right of access against any agency refusing to allow an individual to inspect a record kept on him." *Doe*, 540 U.S. at 618 (citing 5 U.S.C. §§ 552a(g)(1)(A)-(B)). The third category covers "an agency's failure to maintain an adequate record on an individual" that results in a "determination 'adverse' to that person." *Id.* (citing 5 U.S.C. § 552a(g)(1)(C)). The fourth category covers any "adverse effect" from a "failure [by the agency] to hew to the terms of the Act." *Id.* (citing 5 U.S.C. § 552a(g)(1)(D)). In actions brought under (g)(1)(C) and (D), the government will only be liable for "actual damages sustained by the individual as a result of the refusal or failure." 5 U.S.C. § 552a(g)(4).

The Privacy Act's focus on the proper "collection, maintenance, use, and dissemination" of personal information, *Krieger v. Dep't of Just.*, 529 F.Supp.2d 29, 40 (D.D.C. 2008), necessarily

limits its scope.  For example, "[i]t is well-established that, 'generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments.'"  *Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (quoting *McCready*, 465 F.3d at 7).  The D.C. Circuit has also stated that a "collateral attack on [an] original personnel decision" is an "impermissible" use of the Privacy Act.  *Kleiman v. Dep't of Energy*, 956 F.2d 335, 339 (D.C. Cir. 1992).  By extension, "it bears mention that any harm plaintiff suffered from the administrative actions taken against him is not actionable under the Privacy Act."  *Cacho v. Chertoff*, Civ. A. No. 06-0292 (ESH), 2006 WL 3422548, at *3 (D.D.C. Nov. 28, 2006) (citing *Albright v. United States*, 732 F.2d 181, 190 (D.C. Cir. 1984) ("[T]he Privacy Act was not intended to shield these employees from the vicissitudes of federal personnel management decisions.")); *see also Hanna v. Herman*, 121 F. Supp. 2d 113, 124 (D.D.C. 2000) ("[P]laintiff cannot rely on any arguable violation of the Privacy Act to collaterally attack the agency's decision to demote him.").

## II.    Factual Background

Plaintiff, Jennifer L. Lombrano was a commissioned officer in the United States Public Health Service until she retired in February 2021.  *See* 2d Am. Compl. (ECF No. 38) ¶ 3.  Before her retirement from the Public Health Service in February 2021, Plaintiff was assigned, pursuant to a Memorandum of Agreement, to the Southcentral Foundation, located in Anchorage, Alaska, where she served as an oral and maxillofacial surgeon on active duty.  *See Id.* ¶¶ 3, 16.  Beginning in 2002, when Plaintiff was first hired as a commissioned corps officer in the United States Public Health Service, she signed a Memorandum of Agreement for each assignment within the Public Health Service to which she was assigned.  *See* Ex. 1, 2002 Mem. of Agreement with the Yukon-Kuskokwim Delta Regional Hospital, Bethel, Alaska; Ex. 2, 2004 Mem. of Agreement with Southcentral Foundation; Ex. 3, 2006 Mem. of Agreement with Southcentral Foundation; Ex. 4, 2008 Mem. of Agreement with Southcentral Foundation; Ex. 5, 2010 Mem. of Agreement with

Southcentral Foundation; Ex. 6, 2014 Mem. of Agreement with Southcentral Foundation; *see also* Ex. 7, Lombrano Dep. Tr. 29:16-25; 30:1-24; 32:11-25; 33:1-18; 36:8-25; 37:1-16; 37:16-25; 38:1-24; 39:1-15; 39:16-25; 40:1-25; 41:1-20.

On or about August 11, 2020, after Plaintiff had experienced severe panic attacks from professional stress, Plaintiff consulted with her supervisor at the Southcentral Foundation, Abby DeBonis, who advised Plaintiff to take some time off and to go to Joint Base Elmendorf-Richardson to seek treatment. *Id.* at 80:20-25; 83:18-25; 84:1-14; 86:20-25; 87:1-2. On the same day, Plaintiff went to Joint Base Elmendorf-Richardson with the intention of seeking outpatient treatment in order to obtain a medical clearance. *Id.* at 89:9-11, 13-17. Once she arrived, she told staff at the outpatient clinic that she was seeking treatment for alcohol out of state and that she needed to obtain a medical clearance. *Id.* Plaintiff contends that at that point, the outpatient clinic was full, but that staff told her they could treat her in the behavioral health unit. *Id.* at 91:3-7. Joint Base Elmendorf-Richardson is a federal facility. *Id.* at 91:14-16. Once she arrived in the behavioral health unit, Plaintiff testified that the staff locked the door behind her, *id.* at 92:2-3, and the staff questioned Plaintiff as to why she was there. *Id.* at 92:8-10. Plaintiff communicated that she was not there to seek behavioral health treatment but to seek a medical clearance. *Id.* Thereafter, Plaintiff was taken to a room where she was subject to a full body search. *Id.* at 92:19-23. Staff also conducted a search of Plaintiff's belongings and located three THC gummies in Plaintiff's bag. *Id.* at 93:8-9, 15-18. During Plaintiff's deposition, she testified that she did not know to whom the THC gummies belonged. *Id.* at 93:23-24. Once Plaintiff was admitted to the Behavioral Health Unit, she met with Colonel Christine Campbell during intake. *Id.* at 113:3.

Colonel Christine Campbell served in the Behavioral Health Unit at Joint Base Elmendorf-Richardson in Anchorage, Alaska as a staff psychiatrist in August 2020. Ex. 8, Campbell Dep. Tr.

12:2-21. Colonel Campbell's duties in her assignment as a staff psychiatrist included the care of patients in the inpatient ward, which included evaluating patients and treating those patients. *Id.* at 13:2-6. Colonel Campbell testified that patients once admitted are evaluated and, following that evaluation, a treatment plan is developed. *Id.* at 13:9-13. As progress is made with the treatment plan and once a patient is ready, the patient is discharged. *Id.* With respect to Colonel Campbell's experience in the Behavior Health Unit, she would have an in-depth conversation with the patient about what brought the patient to the hospital, what was going on with the patient, their past psychiatric history, medications, allergies, family history, social history, any sort of drug use or alcohol use, any kind of medical conditions they had, and other considerations for making a diagnosis. *Id.* at 15:15-22; 16:1-2.

Colonel Campbell treated Plaintiff at Joint Base Elmendorf-Richardson. *Id.* at 20:2-9. In the course of Colonel Campbell's treatment of Plaintiff, she conducted an initial interview. *Id.* at 20:10-13. During the initial interview with Colonel Campbell, Plaintiff indicated to Colonel Campbell that Plaintiff had been experiencing stress, that she wanted to get help and that she had a history of getting help for psychiatric issues, but that she wanted to do the treatment in her own way. *Id.* at 22:11-21. Plaintiff indicated to Colonel Campbell that she wanted to keep everything very private. *Id.* at 23:7-14. Colonel Campbell, however, found Plaintiff to not be transparent because Plaintiff did not want to talk about what was going on with her, stating that she was okay, even though it was obvious to Colonel Campbell that she was not okay. *Id.* at 23:17-22; 24:1-9. Colonel Campbell asked Plaintiff about her alcohol use, how much she was drinking, the frequency of her drinking, and if she was experiencing consequences from her drinking. *Id.* at 25:2-8. Plaintiff indicated to Colonel Campbell that her drinking was not a problem, but Colonel Campbell, having worked with many patients with substance abuse, recognized that patients

struggle getting into treatment and will often minimize how much they are using. *Id.* at 25:9-22; 26:1-4. Colonel Campbell was concerned about Plaintiff's history of impulse control disorders, post-traumatic stress disorders, and other psychological problems and wanted to ensure that Plaintiff got the care that she needed. *Id.* at 26:5-22. The impressions Colonel Campbell formed about Plaintiff occurred as a result of Colonel Campbell's conversations with Plaintiff. *Id.* at 27:3-7. Colonel Campbell further testified that her job involves listening to the patient and trying to understand what is going on in order to figure out the best course of action to help them. *Id.* at 27:22; 28:1-4. Colonel Campbell also was aware that THC infused gummies were found in Plaintiff's possession upon intake. *Id.* at 30:18-21; 31:1-4. Further, Colonel Campbell believed that Plaintiff had a risk of suicide at the time of Colonel Campbell's initial evaluation. *Id.* at 41:3-6. Colonel Campbell ultimately was able to convince Plaintiff to stay voluntarily in the inpatient clinic. *Id.* at 48:1-12. In treating Plaintiff, Colonel Campbell had multiple conversations with Plaintiff and did not make a record of every conversation. *Id.* at 49:20-22; 50:1-2.

Colonel Campbell also had an extensive conversation with Plaintiff's husband about Plaintiff's substance use and the extreme nature of her use. *Id.* at 83:21-22; 84:1-2. Colonel Campbell testified that Plaintiff's substance use was one of the worst cases she had seen, and she assessed that Plaintiff had a significant problem. *Id.* at 84:3-8. More specifically, Colonel Campbell learned through Plaintiff's husband that Plaintiff had attempted suicide attempt, but that it was an especially dangerous situation where she had a gun, she had threatened her husband, she had threatened herself, and that at the time of the suicide attempt, she was very intoxicated. *Id.* at 84:9-17. Colonel Campbell testified that it was a "highly dangerous charged situation." *Id.* Plaintiff's husband also told Colonel Campbell that Plaintiff would drink the entire day, she drank until she passed out, that at night he could not sleep because he would be watching her because

she would vomit in her sleep and he was worried that she would die, and that she used all kinds of drugs and drank excessively. *Id.* at 85:7-14. Colonel Campbell was "floored" by the information. *Id.* at 85:15-16. After Colonel Campbell's conversation with Plaintiff's husband, Colonel Campbell testified that "I was really concerned about her safety, and the fact, that, you know, she is a practicing medical provider and putting patients at risk." *Id.* at 84:18-21.

After her evaluation and based on interactions with Plaintiff, Colonel Campbell decided to contact Plaintiff's employer. *Id.* at 88:14-22. Colonel Campbell testified that "[j]ust the fact that [Plaintiff] had an alcohol problem was sufficient enough to contact [Plaintiff's] employer." *Id.* at 89:1-3. Colonel Campbell further testified that it was typical for her to contact the employer/the service component in these circumstances. *Id.* at 89:4-6. More specifically, Colonel Campbell stated that she had worked in the United States Air Force for the entirety of her medical career and "especially on the inpatient ward, everyone's a commander, if you were military, or like Dr. Lombrano, who went by 'Captain Lombrano' and insisted that people call her 'Captain Lombrano,' essentially, we would contact the command for alcohol problems for risk to – of harm to self and for risk of harm to the mission, but everyone's command was involved." *Id.* at 89:7-16. Colonel Campbell reiterated during the deposition that it is "typical procedure" to alert someone's command. *Id.* at 89:17-19. Because Colonel Campbell understood Plaintiff's commander to be the person who worked at the Southcentral Foundation, so Colonel Campbell alerted Southcentral Foundation. *Id.* at 90:3-13. Colonel Campbell communicated to Southcentral Foundation that Plaintiff was at risk of harming herself, that she had a serious alcohol problem, that she was not mentally stable, and that Colonel Campbell had significant concerns about her. *Id.* at 89:7-19; 90:16-20. Colonel Campbell did not communicate that Plaintiff had a citation for possession of marijuana at the time of Colonel Campbell's conversation with the Southcentral

Foundation.  *Id.* at 91:2-6.  Colonel Campbell did not share any of the comments Plaintiff's husband communicated to Colonel Campbell; rather, she tried to keep the information "minimal." *Id.* at 91:19-22.  Colonel Campbell told Plaintiff "right away" that Colonel Campbell had contacted her employer.  *Id.* at 92:9-13.

Colonel Campbell also testified that she "had concerns about [Plaintiff's] ability to practice medicine, essentially, in an impaired state."  *Id.* at 106:1-3.  Colonel Campbell testified that she had contacted commands about similar concerns "[h]undreds, if not thousands, of times . . . because oftentimes we do have people who are unable to perform their duties and like, for example, in the Air Force, in mental health, we see a lot of Security Forces, right, and so, we get into that conversation of whether or not someone is safe to arm up and have a gun."  *Id.* at 109:16-22; 110:1.

As to patient confidentiality, Colonel Campbell testified that she shared "a minimum amount of information that's necessary."  *Id.* at 112:3-5.  Colonel Campbell does not go into the details of the diagnosis or the kinds of things going on with the patient; rather, the minimum amount of information is shared to allow the command/employer to make a good risk decision. *Id.* at 112:17-22; 113:1-3.  Colonel Campbell followed that same protocol with respect to Plaintiff's case and the communication Colonel Campbell had with the Southcentral Foundation. *Id.* at 113:4-6.

In the time period applicable to this action, Plaintiff signed an agreement with the Southcentral Foundation on April 7, 2014.  *See* Ex. 6, 2014 Mem. of Agreement with Southcentral Foundation; *see also* Ex. 7, Lombrano Dep. Tr. 39:16-25; 40:1-25; 41:1-20.  The 2014 Memorandum of Agreement with the Southcentral Foundation stated that the period of assignment with Plaintiff at the Southcentral Foundation began April 1, 2014, and ended upon the effective date of a personnel order that "reassigns, retires, or otherwise separates the officer from the [United

States Public Health Service], or upon revision of the MOA." Ex. 6, 2014 Mem. of Agreement with Southcentral Foundation, at 6. The 2014 Memorandum of Agreement also states that "[t]he Tribal Organization entering into the agreement may terminate the assignment by giving [Alaska Area Native Health Service] written notice of such intent to terminate no less than 90 days in advance." *Id.*; *see also* Ex. 7, Lombrano Dep. Tr. 40:22-25; 41:1-20.

On September 2, 2020, Abby DeBonis, Senior Director of Dental at the SouthCetnral Foundation, placed Plaintiff on "Nonduty with Pay" effective September 2, 2020. *See* Ex. 9, September 2, 2020, Debonis Letter. The letter informed Plaintiff that "[y]ou are being relieved of your duties and placed into this status because it has been determined it is in the best interest of Southcentral Foundation to remove you from your duty station. This action is being initiated due to your violation of the [Southcentral Foundation] Background Check Procedure." *Id.* at 1. Ms. Karen McIntire, Senior Human Resources Director of the Southcentral foundation, was deposed in this matter. *See generally* McIntire Dep. Tr. (ECF No. 39-9). Ms. McIntire testified that Southcentral's decision to terminate Plaintiff occurred "because [Plaintiff] failed to notify [Southcentral Foundation] within 24 hours based on the background procedure" of Plaintiff's citation. *Id.* at 101:16-21; 103:4-13; 165:3-7. As to the communication Colonel Campbell had with Southcentral Foundation regarding Plaintiff's hospitalization, Ms. McIntire testified that the communication "had some impact" on Southcentral's decision to terminate Plaintiff. *Id.* at 166:11. Ms. McIntire further testified that Colonel Campbell's communication also "had some impact" as to the "[q]uality of care for our community . . . – for [Southcentral Foundation's] patients." *Id.* at 166:13-18. Martha Wanca, who served as the Western Region Commissioned Corps Liaison for the Public Health Service in Anchorage, Alaska, during the time of the events alleged here, testified that pursuant to Plaintiff's Memorandum of Agreement, the Agreement could be terminated for

- 10 -

any reason.  Ex. 10, Wanca Dep. Tr. 13:4-14; 135:21-22; 136:1-2.  Once Southcentral Foundation terminated Plaintiff's employment, it placed her on a non-duty with pay status, meaning she received pay until her retirement date.  *Id*. at 137:16-22; 138:1-7.

Plaintiff retired from the Public Health Service in February 2021, the date by which she had planned to retire when she first started with the Southcentral Foundation in 2010 because it was based on a period of twenty years of service.  Ex. 7, Lombrano Dep. Tr. 42:12-22; Ex. 10, Wanca Dep. Tr. 136:20-21.  If Plaintiff had not chosen to retire, she would have remained employed by the Public Health Service.  Ex. 10, Wanca Dep. Tr. 138:15-18.

## III.    **Procedural History**

Following the filing of Plaintiff's initial Complaint on March 31, 2021, *see* ECF No. 1, Plaintiff subsequently filed a Motion for Leave to file an Amended Complaint (ECF No. 12-4) on July 30, 2021, which this Court granted on August 2, 2021.  *See* Aug. 2, 2021, Min. Order.  Most recently, on March 4, 2025, following conclusion of the parties' discovery, Plaintiff filed a Motion for Leave to file a Second Amended Complaint (ECF No. 38), which this Court granted on March 4, 2025.  *See* Mar. 4, 2025, Min. Order.

Plaintiff alleges a violation of the Privacy Act, 5 U.S.C. ¶ 552a, based on alleged "willful and intentional" communications that an unnamed security officer with Joint Base Elmendorf Richardson and Colonel Christine Campbell, a psychiatrist at Joint Base Elmendorf Richardson hospital, made to the Department of Health and Human Services and Plaintiff's employer, the Southcentral Foundation, where Plaintiff was employed through a Memorandum of Agreement with the Department of Health and Human Services, Public Health Service.  *See* 2d Am. Compl. (ECF No. 38) ¶ 55.  Plaintiff brings one claim under the Privacy Act for unauthorized disclosure under 5 U.S.C. § 552a(b), *see* 2d Am. Compl. (ECF No. 38) ¶ 55, and for relief, requests (1) the award of monetary damages "for the unlawful release of her records which caused her severe

injury"; (2) an order requiring Defendant to "expunge all records or information maintained by Defendant regarding Plaintiff that is inaccurate and/or derogatory, pursuant to 5 U.S.C. § 552a(g)(2)(A)"; (3) an award of "reasonable attorney's fees and costs of [the] action in accordance with the Privacy Act, including but not limited to 5 U.S.C. § 552a(g)(2)(B) and 5 U.S.C. § 552a(g)(3)(B)."  2d Am. Compl. (ECF No. 38) at "Prayer for Relief."

**LEGAL STANDARDS**

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material fact" is one whose existence affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" exists when the non-movant produces sufficient evidence of a material fact so that a fact finder is required to resolve the parties' differing versions at trial. *Id.* at 249.

Summary judgment endeavors to streamline litigation by disposing of factually unsupported claims or defenses and thereby determining whether trial is genuinely necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986)).  A moving party may succeed on summary judgment by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A movant may also succeed by pointing to the absence of evidence proffered by the nonmoving party.  *Id.*

- 12 -

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant. *See Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ARGUMENT

The Privacy Act "safeguards the public from unwanted collection, maintenance, use[,] and dissemination of personal information contained in agency records." *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984). The Act provides that "[n]o agency shall disclose any record which is *contained in a system of records* by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains[.]" 5 U.S.C. § 552a(b) (emphasis supplied). The Act defines a "record" as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

*Id.* § 552a(a)(4).

The Privacy Act defines a "system of records" as a "group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). "The fact that records are capable of being retrieved by name or other personal identifiers is not alone sufficient to transform a group of records into a 'system of records'; rather, there must be evidence that 'an agency in practice retrieves information about individuals by

- 13 -

reference to their names or other identifiers.'" *Mullane v. Dep't of Justice*, Civ. A. No. 22-0725 (RBW), 2024 WL 3359534, at *4 (D.D.C. July 10, 2024) (quoting *Henke v. Dep't of Com.*, 83 F.3d 1453, 1461 (D.C. Cir. 1996)).

The Privacy Act allows for the filing of a civil action against an agency for its failure to comply with any of the Act's provisions when the agency's failure has an "adverse effect on the individual." 5 U.S.C. § 552a(g)(1)(D); *see Chao*, 540 U.S. 614, 618-19 (2004) (describing the Act's "catchall" remedy for any violation having an adverse effect).

The Act provides for lawsuits brought under subsection 552a(g)(1)(D) if the court determines that the agency acted in a manner which was intentional or willful. *See* 5 U.S.C. § 552a(g)(4). Should a plaintiff make the requisite showing, the United States shall be liable to the individual in an amount equal to the sum of the—

(A) actual damages sustained by individual as a result of the refusal or failure, but in no case shall a person entitled to recovery release less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court.

*Id.* The Supreme Court has "clarified that the statutory damage award of $1000 is available only to plaintiffs who can establish actual damages." *Mullane*, 2024 WL 3359534, at *4–5 (citing *Chao*, 540 U.S. at 627).

Where, as here, a plaintiff pursues a claim for improper disclosure under 5 U.S.C. § 552a(b), the plaintiff "must show that (1) the disclosed information is a record within a system of records; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 238 (D.D.C. 2005) (internal quotations omitted) (citing *Logan v. Dep't of Veterans Affs.*, 357 F. Supp. 2d 149, 154 (D.D.C. 2004). Should a plaintiff meet these requirements, she

- 14 -

"may recover monetary damages, costs and fees if she [ ] can further establish that she sustained actual damages as a result of some harm caused by the agency's disclosure." *Doe v. Dep't of Treas.*, 706 F. Supp. 2d 1, 6 (D.D.C. 2009).

Plaintiff alleges that Defendant, through its agents, violated the Privacy Act when it (1) "maintained records within the meaning of the Privacy Act regarding Plaintiff," 2d Am. Compl. (ECF No. 38) ¶ 54, and (2) "intentionally or willfully disclosed and released protected records within the Privacy Act by contacting the Human Resources office of the Southcentral Foundation and by contacting Captain Wanca." *Id.* ¶¶ 55-56. The record supports neither claim, nor has Plaintiff alleged, much less demonstrated, that the alleged unlawful disclosures were retrieved from a system of records, as required to make a Privacy Act claim, or that the disclosures were willful or intentional. Plaintiff further alleges that "the intentional and unlawful dissemination of this information . . . caused Plaintiff pecuniary loss as she was dismissed from her position at Southcentral Foundation . . . she was forced to retire early from the [United States Public Health Service] . . . [and] her future employment prospects are jeopardized because she will have to reveal circumstances behind the dismissal to future employers." *Id.* ¶ 59. Plaintiff's claim that she was adversely affected is, however, untethered to her claim of unauthorized disclosure. Indeed, Plaintiff's employment with the Southcentral Foundation was at-will and could be terminated at any time. Further, Plaintiff had intended to retire at the end of the year in which she was actually terminated. On these bases, Plaintiff has failed to show a causal connection between the alleged unlawful disclosures and Plaintiff's termination or her inability to gain current full-time employment. Because Plaintiff has not demonstrated the required elements for a Privacy Act claim, the court should grant Defendant's motion for summary judgment, deny Plaintiff's cross-motion for summary judgment, and dismiss Plaintiff's Second Amended Complaint.

- 15 -

**I.    Plaintiff Has Not Demonstrated that the Disclosures Were Maintained Within and Retrieved from a System of Records as Defined by the Privacy Act.**

In her motion for summary judgment, Plaintiff argues that (1) Colonel Christine Campbell, treating psychiatrist at Joint Base Elmendorf-Richardson. made an unlawful release of Plaintiff's records when Colonel Campbell disclosed a treatment note she had prepared, and (2) an unnamed individual communicated to Plaintiff's employer a citation Plaintiff received on August 11, 2020, for possession of THC gummy bears. *See* Pl's Mem. (ECF No. 39-1) at 25 (citing to Colonel Campbell's deposition), 27-28. Plaintiff, however, has not established that either disclosure was maintained within or retrieved from a system of records as defined by the Privacy Act.

The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]" 5 U.S.C. § 552a(a)(5). Therefore, under the Privacy Act, a "'system of records exists only if the information contained within the body of material is both *retrievable* by personal identifier and actually *retrieved* by personal identifier.'" *Paige v. DEA*, 666 F.3d 1355, 1359 (D.C. Cir. 2012) (quoting *Maydak v. United Sates*, 630 F.3d 166, 178 (D.D.C. 2011) (emphasis in original). By contrast, the disclosure of information "acquired from non-record sources—such as observation, office emails, discussions with co-workers and the 'rumor mill'—does not violate the Privacy Act . . . , even if the information disclosed is also contained in agency records." *Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011) (citations omitted); *see also Krieger v. Dep't of Justice*, 529 F. Supp. 2d 29, 47 (D.D.C. 2008) ("Information derived solely from independent sources is not prohibited by statute even though identical information may be contained in an agency system of records.").

Plaintiff's suggestion that the communication of Plaintiff's August 11, 2020, citation by an unnamed security officer to her then employer is a violation of the Privacy Act violation lacks

support.   Plaintiff alleges that a "[Joint Base Elmendorf-Richardson] security police officer informed Captain Wanca (a human resources specialist employed by the Department of Health and Human Services) that plaintiff had been discovered with drugs on base and that charges would be filed, and that Plaintiff had been issued a citation."   Plaintiff, however, has not identified the security officer who allegedly made the disclosure, let alone deposed the security officer and offered testimonial support for the context of the disclosures at issue.   The proposition, then, that the disclosures were violative of the Privacy Act, without any factual support as to how the security officer obtained the information, is speculative, and offers no basis for a finding of summary judgment in favor of Plaintiff on this claim.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials).

The Privacy Act requires that (1) the records disclosed must be contained in a system of records and (2) that the records alleged to have been unlawfully disclosed must also have been retrieved from that system of records.  Plaintiff satisfies neither prong.  As to the disclosure made by Colonel Campbell, the communication was not based on a record from which she obtained the information; rather, the information she shared with Plaintiff's employer was derived from her own mental impressions in speaking with Plaintiff during intake and while treating Plaintiff.  *See* Ex. 8, Campbell Dep. Tr. at 27:3-7; 112:3-5; 112:17-22; 113:1-3; *see also Paige,* 666 F.3d at 1359 (noting that a system of records exists only if the information is both retrievable by personal identifier and actually retrieved by personal identifier); *Cloonan*, 768 F. Supp. 2d at 164 (information derived from non-record sources such as observation and discussions does not violate

- 17 -

the Privacy Act, even if the information disclosed is also contained in a system of records). Further, there is no record evidence to support that Colonel Campbell actually retrieved the information from a system of records. On both bases, Plaintiff's Privacy Act claim fails.

Plaintiff contends that the disclosures violate the Privacy Act because the retrieval rule exception is applicable. *See* Pl's Mem. at 26-27 (citing *Bartel v. FAA*, 725 F.2d 1409, 1411 (D.C. Cir. 1984)). Not so. In *Bartel*, the D.C. Circuit considered whether a violation of the Privacy Act occurred when a former employer disclosed a summary of improper conduct derived from a record of investigation. 725 F.2d at 1409. The *Bartel* exception to the retrieval rule is narrow and should be applied only in cases turning on similar facts and where Plaintiff cannot satisfy the retrieval standards. *See Bartel*, 725 F.2d at 1409. Here, the *Bartel* exception does not apply because the case does not turn on similar facts and does not raise similar concerns. *See Mullane*, 2024 WL 3359534, at *9. More specifically, the information that Colonel Campbell disclosed was based on her own mental impressions of Plaintiff and her conversations with Plaintiff, "sources not covered by the Privacy Act, . . . the official's personal knowledge." *Id*. at *10 (quoting *Dep't of Treasury*, 706 F. Supp. 2d at 7). As such, the disclosure does not implicate the *Bartel* exception, "because assuming that the official disclosed her personal recollection of an investigation . . . there is no plausible showing that the contents and conclusions . . . were part of and were retrieved from any record which is contained in any system of records." *Id*. (cleaned up). *See also Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 40 (D.D.C. 2004) ("[t]he mere capacity to retrieve records by the name of an individual is not sufficient to create a system of records."). A disclosure "rarely implicates the Privacy Act . . . so long as the disclosing official obtained the information disclosed from other sources not covered by the Privacy Act, such as the disclosing official's personal knowledge." *Dep't of Treasury*, 706 F. Supp. 2d at 6-7. Here, the *Bartel* exception does not apply.

## II.    **Plaintiff Has Not Demonstrated that the Disclosures Were Intentional or Willful.**

To prevail on her Privacy Act claims, Plaintiff also must show that Defendant acted in a "intentional" or "willful" manner.  *Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987); *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984); 5 U.S.C. § 552a(g)(4).  Plaintiff falls far short of this exacting standard.

The words "intentional" and "willful" in subsection (g)(4) of the Privacy Act do not have their vernacular meanings; instead, they are "terms of art." *White v. Off. Pers. Mgmt.*, 840 F.2d 85, 87 (D.C. Cir. 1988) (per curiam); *see also Convertino v. Dep't of Just.*, 769 F. Supp. 2d 139, 145-46 (D.D.C. 2011) ("[s]tandards of intentionality and willfulness are anything but rare in the law," and "the Privacy Act's intent or willfulness requirement is peculiar to the Act and must not be confused with less exacting standards parading under the same name from other common law or statutory sources").  While not requiring premeditated malice, *see Parks v. IRS*, 618 F.2d 677, 683 (10th Cir. 1980), cases analyzing subsection (g)(4) have held that, to meet the "intentional or willful" standard, an agency's actions must be "so patently egregious and unlawful that anyone undertaking the conduct should have known it was unlawful."  *Maydak v. United States*, 630 F.3d 166, 179-83 (D.C. Cir. 2010); *accord Sussman*, 494 F.3d at 1122; *Laningham*, 813 F.2d at 1242-43; *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984).  This standard is "somewhat greater than gross negligence." *Maydak*, 630 F.3d at 179-83; *accord Beaven v. Dep't of Just.*, 622 F.3d 540, 547-53 (6th Cir. 2010); *Powers v. Parole Comm'n*, 296 F. App'x 86, 87 (D.C. Cir. 2008); *Scrimgeour v. IRS*, 149 F.3d 318, 326 (4th Cir. 1998).

Courts have also defined the "intentional" and "willful" standard as a "flagrant disregard of an individual's rights under the Privacy Act." *Lewis v. Mossbrooks*, 788 F. App'x 455, 458 (9th Cir. 2019); *accord Maydak*, 630 F.3d at 179-83; *Deters v. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996);  *Covert v. Harrington*, 876 F.2d 751, 756-57 (9th Cir. 1989).  Finally, the terms have

also been defined as "without grounds for believing [the agency's actions] to be lawful." *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989); *accord Maydak*, 630 F.3d at 179-83; *Covert*, 876 F.2d at 756-57; *Albright*, 732 F.2d at 189-90.  The intent element is "a high hurdle to clear." *Hurt v. D.C. Ct. Servs. & Offender Supervision Agency*, 827 F. Supp. 2d 16, 20 (D.D.C. 2011).  At summary judgment, "[P]laintiff bears the burden of coming forward with affirmative evidence supporting an allegation of intentional or willful conduct by the agency." *Mulhern v. Gates*, 525 F. Supp. 2d 174, 184 (D.D.C. 2007) (citing *Laningham*, 813 F.2d at 1242; *Hill v. United States Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986)).  "Plaintiff cannot avoid summary judgment with evidence that the 'government handled a matter in a [merely] disjointed or confused manner, or . . . acted inadvertently to contravene the Act." *Velikonja v. Mueller*, 362 F. Supp. 2d 1, 18 (D.D.C. 2004) (cleaned up), *abrogated on other grounds*, *Doe v. Chao*, 540 U.S. 614 (2004).

Plaintiff cannot clear this high hurdle.  The record instead demonstrates that Colonel Campbell clearly explained the purpose for which she contacted the Southcentral Foundation regarding Plaintiff: a real belief that a Department of Defense medical provider posed a danger to herself and to her patients.  *See* Ex. 8, Campbell Dep. Tr. at 84:9-21; 85:7-16; 90:16-20.  This is supported by Colonel Campbell's explanation on the record, where she explained that the reason for contacting Southcentral was because throughout the entirety of her career in the Air Force, everyone was in the military, including in the case of Plaintiff (who went by "Captain Lombrano" and insisted that everyone call her "Captain Lombrano"), and the protocol thus was to contact the employer about alcohol problems where there was a risk of harm to self or harm to mission; it was a typical procedure to alert the command/employer.  *Id.* at 89:7-19.  There is no evidence in the record to suggest that Colonel Campbell knew that relaying the information was "so patently egregious" that she knew it was "unlawful."  *Id.*  Indeed, Colonel Campbell testified that it was

- 20 -

standard protocol. *Id*. at 89: 89:1-6; 109:16-22; 110:1.  Further, Plaintiff can point to no evidence to suggest that Colonel Campbell believed that her actions were "a flagrant disregard" for Plaintiff's s privacy rights.  Rather, Colonel Campbell testified that she kept the information she shared to a minimum and, as such, was cognizant of the confidentiality involved.  *Id.* at 91:19-22; 112:3-5; 112:17-22; 113:1-3.  Therefore, it cannot be said that Colonel Campbell's disclosures were "intentional" or "willful" as defined by the Privacy Act.

Further, Colonel Campbell has provided a declaration in which she testifies under oath (consistent with her deposition testimony and her communications at the time of the disclosures) that she believed the Southcentral Foundation should know information regarding one of its providers that affected patient safety.  *See* Ex. 11, Campbell Decl.  Colonel Campbell further states, under oath, that she had no intention of violating Plaintiff's privacy when she called the Southcentral Foundation.  *Id.* ¶¶ 8, 10.  With this evidence, Plaintiff is unable to demonstrate that any such disclosure was "intentional" or "willful."

This case is analogous to that of *Laningham*, where the D.C. Circuit upheld the grant of summary judgment in favor of the Navy in finding that the plaintiff did not meet his burden in showing that the Navy's disclosure was "intentional" or "willful."  813 F.2d at 1241-43.  There, the Circuit credited the declaration submitted by the Navy, wherein the attorney who allegedly made an improper disclosure stated that he did not intend to violate the Privacy Act intentionally or willfully, thus providing affirmative evidence of his intent at the time of disclosure.  *Id.*  The Court in this case is faced with similar circumstances, that is, a signed declaration from Colonel Campbell attesting to the underlying rationale for her disclosure and noting that she believed the information contained within the discharge records was accurate and truthful.  Contemporaneous records support this belief.  Plaintiff cannot overcome this evidence.  Accordingly, Plaintiff is

unable to show that the Air Force acted in a manner that was "intentional" or "willful." Unable to succeed on this factor of his burden, Plaintiff's Privacy Act claims fail, and Defendant is entitled to summary judgment.

### III.    <u>Plaintiff Has Not Demonstrated that the Disclosures Resulted in an Adverse Effect.</u>

Plaintiff's Second Amended Complaint seeks an award of "monetary damages for the unlawful release of her records which caused her severe injury." 2d Am. Compl. (ECF No. 38) at "Prayer for Relief." Plaintiff, however, cites no legal basis for the award of monetary damages. Nonetheless, under the Privacy Act, damages may be available under 5 U.S.C. § 552a(g)(1)(D) where the violation "ha[s] an adverse effect on an individual." *Id.* To obtain relief for the Air Force's purported violation of the Privacy Act's nondisclosure provision, Plaintiff must prove that the alleged disclosure was the proximate cause of some pecuniary or economic harm. *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42, 67 (D.C. Cir. 2019). "That is, [the Air Force's] conduct must have been a 'substantial factor' in the sequence of events leading to" Plaintiff's injuries, and "those injuries must have been 'reasonably foreseeable or anticipated as a natural consequence" of the Air Force's conduct. *Id.* (quoting *Owens v. Rep. of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017). While the cause need not be the sole cause, to be the proximate cause, the defendant's conduct must "create a foreseeable risk of harm." *Id.*

Here, Plaintiff has not demonstrated that the disclosure was the cause or proximate cause of Plaintiff's termination. Plaintiff alleges that "[b]ased upon the unlawful disclosures by Air Force personnel, on August 28, 2020, the Human Resources department at [Southcentral] Foundation (which consisted of Ms. McIntire together with Carla Ogle), decided to recommend Plaintiff's termination." 2d Am. Compl. ¶ 47. Plaintiff cannot show, however, that her termination was caused (or was proximately caused) by this disclosure. Moreover, Plaintiff's employment with Southcentral Foundation was at-will and could be terminated for any reason at any time,

- 22 -

provided that Southcentral Foundation gave Plaintiff ninety days' notice. Ex. 10, Wanca Dep. Tr. 13:4-14; 135:21-22; 136:1-2; Ex. 6, 2014 Mem. of Agreement with Southcentral Foundation. Further, the record shows that Plaintiff's termination was a result of Plaintiff's failure to notify Southcentral Foundation of her citation within twenty-four hours. *See* McIntire Dep. Tr. (ECF No. 39-9) at 165:3-7 (testifying that Southcentral's decision to terminate Plaintiff occurred "because [Plaintiff] failed to notify [Southcentral Foundation] within 24 hours based on the background procedure"). Southcentral Foundation's termination letter issued to Plaintiff on September 2, 2020, comports with Ms. McIntire's testimony. The letter stated that Plaintiff was relieved of her duties at Southcentral Foundation "due to [Plaintiff's] violation of the [Southcentral Foundation] Background Check Procedure." *See* Ex. 9, September 2, 2020, Debonis Letter. Because the Air Force's disclosure did not proximately cause Plaintiff's termination, and indeed Southcentral Foundation terminated Plaintiff due to her failure to notify the organization within twenty-four hours of her citation, Plaintiff is without relief.

Further, Defendant is not liable for Plaintiff's alleged monetary losses because the Privacy Act limits liability to harm that can be substantiated by proof of tangible economic loss. *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012). "The Privacy Act does not allow a claim for damages based on reputational or emotional harm." *Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016). Yet that is what Plaintiff contends. She alleges that "she was forced to retire early," "could only find employment on a part-time, two-day per week basis," and that her "future employment prospects are jeopardized because she will have to reveal circumstances behind her dismissal to future employers." 2d Am. Compl. ¶ 59. In her summary judgment motion, Plaintiff also contends that her termination led to the loss of future employment with Southcentral Foundation. Pl's Mem. (ECF No. 39-1) at 33. Plaintiff also argues that the company she formed with her husband "lost a

- 23 -

contract with Providence Alaska Medical Center," *id.* at 35, and, "because of [her] loss of reputation within the Alaska medical community, she had to move across the country to find her current role at Carolina Centers for Oral and Facial Surgery." *Id.* at 36. These allegations of reputational harm are insufficient. *Welborn*, 218 F. Supp. 3d at 82. Nor did Plaintiff retire early; she retired in February 2021, when she had planned to retire. Ex. 7, Lombrano Dep. Tr. 42:12-22 (testifying that when she began with Southcentral Foundation in 2010, she had projected retirement on February 1, 2021, based on twenty years of service); Ex. 10, Wanca Dep. Tr. 136:20-21.

Further, Plaintiff's supposed adverse effects on her ongoing unemployment at Southcentral Foundation were in fact the result of her termination by the Foundation for her failure to comply with its background check procedures by failing to report her citation within twenty-four hours, not because Colonel Campbell contacted the Foundation about Plaintiff's mental health. Plaintiff has not shown otherwise. In total, Plaintiff has not identified any proof of tangible economic loss to substantiate her claim that the harms suffered "were the result of or proximately caused by the refusal or failure" of the Air Force to comply with the Act, *Chickakli v. Kerry*, 203 F. Supp, 3d 48, 57 (D.D.C. 2016), "as opposed to any other possible influences." *Krieger v. Dep't of Justice*, 562 F. Supp. 2d 14, 18 (D.D.C. 2008).

Plaintiff's allegations are akin to those alleged in *Chambers v. Department of the Interior*, where the plaintiff alleged that a lost record hampered her ability to apply for government jobs. 568 F.3d 998, 1007 (D.C. Cir. 2009). There, the Court held that "[s]uch an adverse effect . . . is not enough to make out a claim under subsection (g)(1)(C), which requires a specific 'adverse determination' resulting from an agency's failure to maintain accurate records." *Id.* (footnote omitted); *see also McCready v. Nicholson,* 465 F.3d 1, 12 (D.C. Cir. 2006) ("Quite simply, the text of the statute conditions relief upon a concrete, adverse determination."); *Doe v. FBI*, 718 F.

Supp. 90, 105 (D.D.C. 1989) ("[r]eputational injury simply does not qualify" as an adverse determination under 5 U.S.C. § 552a(g)(1)(C)).  Therefore, Plaintiff's Privacy Act claim fails and should be dismissed.

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

Dated:  April 25, 2025                                     Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By: _____ */s/ Dedra S. Curteman* _____
DEDRA S. CURTEMAN,
   D.C. Bar #90021492
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2550

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JENNIFER L. LOMBRANO,

Plaintiff,

v.

DEPARTMENT OF THE AIR FORCE,

Defendant.

Civil Action No. 21-0872 (DLF)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion for summary judgment, and the entire

record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that Plaintiff's Second Amended Complaint is DISMISSED.

SO ORDERED:

_____                     _____
Date                                        DABNEY L. FRIEDRICH
                                            United States District Judge